IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELNOR M. GOODWIN, | ) | CASE NO. 1:07 cv 2459 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Elnor M. Goodwin's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

On February 25, 2005, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of December 26, 2002 due to limitations related to degenerative disc disease of the cervical and lumbar spine, right rotator cuff tear and impingement syndrome, and right knee sprain. On May 21, 2007,

Administrative Law Judge ("ALJ") Edmund Round determined Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as a housekeeping cleaner and, therefore, was not disabled (Tr. 13-22). On appeal, Plaintiff claims the ALJ's determination is not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on June 19, 1963 (age 43 at the time of the ALJ's determination), Plaintiff is a "younger individual."  *See* 20 C.F.R. §§404.1563, 416. 963.  Plaintiff last completed the eleventh grade and has past relevant work as a housekeeping cleaner, home health aide, nurse's assistant, and punch press operator (Tr. 21).

### B.  Medical Evidence

Plaintiff reported that she first began seeing Thomas A. Fuller, M.D., her family doctor, in 1998 (Tr. 62, 86).  In December 2002, Plaintiff injured herself lifting a patient in her job as a home health aide (Tr. 133).  Beginning in January 2003, Plaintiff began to see Jonathan Waldbaum, M.D., for treatment of that injury (Tr. 171), but also continued to see Dr. Fuller (Tr. 135).

An April 7, 2003 MRI scan of Plaintiff's right shoulder revealed mild degenerative arthrosis and high grade partial thickness articular side tear of the rotator cuff (Tr. 178-79).  X-rays revealed degenerative disc disease throughout Plaintiff's cervical spine (Tr. 134).  A June 2003 MRI scan of Plaintiff's neck revealed disc herniation at C4-C5 with mild cord compression, central and right parasagittal disc herniation at C5-C6, and left parasagittal disc

herniation at C6-C7 with moderate cord compression and mild encroachment on the left C7 foramen (Tr. 125).

On January 29, 2004, Edward Gabelman, M.D., performed right shoulder arthroscopic surgery on Plaintiff (Tr. 883-84). Plaintiff experienced mild decreased range of motion in her shoulder ROM (Tr. 199).

A March 2004 MRI scan of Plaintiff's right knee revealed superficial tearing and an "extremely small" meniscal tear, chronic sprain of the anterior cruciate ligament with edema, and mild chronic tendinosis of the quadriceps tendon (Tr. 174-75). A March 2004 MRI scan of Plaintiff's back showed spondylosis and disc herniation at L4-L5 and L5-S1 (Tr. 149). In June 2004, an electrodiagnostic EMG nerve conduction study had readings that were suggestive of right S1 radiculopathy, however, Dr. Waldbaum found the "study does not meet strict electrodiagnostic criteria for a lumbosacral radiculopathy" (Tr. 173).

In April 2005, an MRI scan of Plaintiff's back showed disc bulge at L4-L5 and disc extrusion at L5-S1, but extrusion did not significantly encroach the spinal canal and there was no significant canal or foraminal narrowing (Tr. 228). In May 2005, Dr. Fuller referred Plaintiff to Dr. Huang, whose examination revealed negative straight leg raise testing and no major sensory, motor, or reflex changes (Tr. 212-14). Plaintiff had pain, but she was "really resisting the whole exam totally" and it was "pretty hard to say that it [was] totally from the pain or somewhat from other issues" (Tr. 213-14). Plaintiff told Dr. Huang that her lawyer wanted him to help her get her worker's compensation allowed (Tr. 214).

The following month, in June 2005, Willa L. Caldwell, M.D., reviewed the evidence on behalf of the state agency and opined that Plaintiff's physical impairments allowed her to sit,

stand, and walk six hours each in an eight-hour day; lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; occasionally stoop, kneel, crouch, crawl, and use stairs and ramps; never do overhead reaching with her right arm; and never use ladders, ropes, and scaffolds (Tr. 191-201). In August 2005, Gary W. Hinzman, M.D., reviewed the record and concurred with Dr. Caldwell's evaluation (Tr. 205).

In August 2005, Plaintiff was the unrestrained, front-seat passenger in a stopped car that was struck from behind by another vehicle (Tr. 806, 813). Plaintiff told the hospital that it was a high speed collision (in excess of 50 mph), but the EMS reported that it was only a 10 mph collision (Tr. 806). Plaintiff reported that she struck the windshield with her head, and had pain in her neck, back, and left shoulder and arm (Id.). Physical examination revealed no motor or sensory deficits and good strength; mild neck tenderness; and "no hematoma, no abrasions or lacerations whatsoever" (Tr. 807). Plaintiff was diagnosed with a cervical strain (Id.). An MRI of the cervical spine was attempted, but Plaintiff would not keep still so she was kept overnight for another attempt (Id.). The next day, a CT scan showed no acute fractures or subluxations, but did show moderate canal stenosis at C5 (Tr. 809). An MRI showed spondylitic degenerative disc disease at C4-C5 and C5-C6 without obvious central canal or neural foraminal stenosis, and edema suggestive of a compression fracture, but there was no loss of vertebral body height (Tr. 812).

A subsequent August 2005 MRI scan of Plaintiff's neck revealed multilevel degenerative disc disease with mild to moderate canal stenosis and neural foramina narrowing (Tr. 486-87). Seven months later, in March 2006, Dr. Goldberg performed a cervical myelogram, which revealed moderate cord at mid C5 level and root sleeve compression at C4-C5 and C6-C7 on the

right side (Tr. 282, 483). Dr. Goldberg noted that this was "despite predominance of left radicular symptoms reported by" Plaintiff (Tr. 485).

In May 2006, Plaintiff told her physicians that she performed yard work and all of her household activities (Tr. 326). In July 2006, Dr. Fuller noted that Plaintiff was independent in her activities of daily living, including driving, shopping, meal preparation, laundry, and public transportation (Tr. 680). Dr. Fuller thought that Plaintiff had chronic pain syndrome and would be a good candidate for pain management (Tr. 236). Dr. Fuller did not think Plaintiff was a surgical candidate (Id.)

Margaret Verrees, M.D., performed neck surgery on September 29, 2006 (Tr. 293-95). The surgery consisted of C4-5, C5-6 and C6-7 anterior cervical diskectomy with microscopic dissection of the discs, C5 and C6 corpectomies, C4 to C7 anterior cervical plating, and placement of a Pyramesh cage (Tr. 292-95). In October 2006, Plaintiff's hand grips were bilaterally equal and her muscle strength was 5/5 in all extremities, and her gait was normal (Tr. 268). X-rays showed good alignment in Plaintiff's neck (Id.). At a January 2007 examination, Plaintiff displayed painful cervical and lumbar flexion with tenderness, but normal heel to toe gait, normal muscle strength, reflexes, and sensation (Tr. 772). A few weeks later, Dr. Fuller opined that Plaintiff had "very dramatic posturing and positioning and motions on arising from sitting" (Tr. 768).

The following month, examination showed negative straight leg raising, slightly decreased sensation in her inner left arm, and give-way strength in her upper extremities; but, the remainder of the sensory exam was normal (Tr. 757). Plaintiff came in with crutches, but Dr. Harris noted that they were "totally unnecessary" and she need[ed] to lose the crutches" (Id.).

Also in February 2007, Dr. Gabelman examined Plaintiff at the request of her counsel (Tr. 796-802). Dr. Gabelman reviewed Plaintiff's history and opined that Plaintiff could not perform gainful employment and provided a questionnaire with extreme limitations (Id.). He opined that Plaintiff could stand/walk 15 minutes at a time for up to one hour a day, sit for one hour at a time up to four hours a day, could not lift any weight because she needed to use crutches to ambulate, and could not work above shoulder level (Tr. 802).

In March 2007, Plaintiff went to Dr. Fuller for treatment and he found normal range of motion, strength, reflexes, sensation, and coordination in all extremities, and negative straight leg raising (Tr. 753-54). Plaintiff showed no neurological deficits and Dr. Fuller opined that her pain complaints "outweigh[ed]" the examination findings (Tr. 745). He declined to prescribe ongoing opioids based on Plaintiff's past history of drug abuse (Id.).

### C. Hearing Testimony

At the February 2007 hearing, Plaintiff testified that she injured her right shoulder (Tr. 943). Since her surgery, the shoulder mainly bothered her when it rained, and she could not lift as well as she could previously (Id.). Plaintiff testified that her neck did not bother her until after a motor vehicle accident in August 2005 (Tr. 946). She had surgery on her neck in September 2006 and expected the brace to come off at her next appointment (Tr. 947). Plaintiff testified that she had been having back problems since her first accident and would have surgery for that in the near future (Tr. 948). Plaintiff testified that she used crutches and a cane, but no one had prescribed them for her (Tr. 949).

Vocational expert ("VE") Deborah Lee also testified at the February 2007 hearing. The ALJ asked the VE to consider an individual with Plaintiff's age and educational and vocational

6

background, who was limited to a range of light work (Tr. 865). Specifically, the individual could sit, stand or walk six hours each in an eight-hour workday; lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; occasionally stoop, kneel, crouch, crawl, and use stairs and ramps,; never use ladders, ropes, and scaffolds; never do above shoulder work with her right arm; and never do hyper-extending of the neck (which means no looking at the ceiling) (Tr. 965). The VE testified that such an individual would be capable of performing Plaintiff's past job as a housekeeping cleaner, both as she actually performed it and as it was generally performed (Tr. 962, 965).

### III. **DISABILITY STANDARD**

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence

but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

### A. The ALJ's Determination that Plaintiff Did Not Meet or Equal a Listed Impairment

Plaintiff first argues that the ALJ erred in concluding her impairments did not meet or equal a listed impairment. The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has failed to meet this burden. Plaintiff does not indicate which listing she believes she meets or equals and she has failed to provide any support for her bald assertion that the ALJ erred in concluding she did not meet or equal a listing.

To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *See Berry v. Comm'r of Soc. Sec.,* 34 Fed. Appx. 202, 2002 WL 857743, *203 (6th Cir. May 3, 2002)(unpublished); *Sullivan. Zebley*, 493 U.S. 521, 530 (1990); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). To equal a listing, the claimant must present medical findings equal in severity to all the criteria for the most similar listed impairment. *See Sullivan*, 493 U.S. at 531; *see also* 20 C.F.R. § 416.926(a). A review of the listings indicates that Listing § 1.04(A) is most applicable to Plaintiff's impairments. Listing § 1.04 states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04. The ALJ found that Plaintiff has the severe impairment of degenerative disc disease. However, Plaintiff has not identified any evidence demonstrating that she meets the A criteria of Listing § 1.04, which requires evidence of nerve root compression characterized by decreased range of motion, motor loss, sensory or reflex loss, and positive straight-leg raising test. The record reflects that in May 2005, Plaintiff had negative straight leg raising tests and no major sensory, motor or reflex changes (Tr. 212-14). In October 2006, Plaintiff had full muscle strength in all extremities (Tr. 268). In January 2007, Plaintiff had normal muscle strength, reflexes, and sensation (Tr. 772). Plaintiff has not presented evidence sufficient to meet her burden of proof for establishing that her degenerative disc

disease meets or equals the A criteria of Listing § 1.04. Accordingly, the Court concludes the ALJ's determination that Plaintiff did not meet or equal a listed impairment is supported by substantial evidence.

### B. The ALJ's Treatment of Plaintiff's Treating Doctors

Plaintiff next claims that the ALJ erred by failing to give controlling weight to the opinions of Plaintiff's treating physicians, Drs. Gabelman and Waldbaum. Specifically, Plaintiff claims the ALJ erred by rejecting Dr. Gabelman's opinion that Plaintiff is unemployable (tr. 801) and Dr. Waldbaum's conclusion that he did not feel Plaintiff is capable of work (Tr. 245).

The opinions of treating physicians are afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Although the regulations ensure an ALJ is not bound by the opinion of a claimant's treating physician, if he chooses to reject said opinion, the ALJ must articulate a good reason for doing so. *See Shelman*, 821 F.2d at 321. Specifically, if a treating source is not accorded controlling weight, the ALJ must apply certain factors – the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. Even still, the reasons offered for a credibility determination need not only comply with these factors, they must also be "good." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 545. However, a statement by a physician whether a claimant is disabled or unable to work is not controlling. *See* 20 C.F.R. § 416.927(e)(1). Indeed, because a claimant's employability, *i.e.*,

whether he is disabled, is an issue ultimately reserved to the Commissioner, a physician's opinion on this topic was not entitled to any special significance. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(e)(1)-(3).

Plaintiff claims the ALJ erred by rejecting the opinions of Drs. Gabelman and Waldbaum that Plaintiff is unable to work. However, Dr. Gabelman's and Dr. Waldbaum's statements are opinions on the issue of disability, which is ultimately reserved to the Commissioner, and thus these opinions are not controlling under the Social Security regulations. Plaintiff provided no other arguments in support of her claim that the ALJ erred in his treatment of the opinions of Dr. Gabelman and Dr. Waldbaum.[1]

Moreover, a review of the ALJ's written decision and the record reflects that the ALJ gave reasonable explanations for rejecting these opinions. With respect to Dr. Waldbaum, the ALJ explained that his opinion appeared to be based on Plaintiff's "recitation of her own symptoms and limitations, which are not supported by the objective and subjective evidence of record" (Tr. 20). With respect to Dr. Gabelman, the ALJ found that his assessment was not entitled to probative weight (Id.). The ALJ explained that Dr. Gabelman's opinion appeared to

---

[1] In addition to his conclusion that Plaintiff is unemployable, Dr. Gabelman also provided an opinion as to Plaintiff's limitations in sitting, standing, and in other areas. Dr. Gabelman opined that Plaintiff could stand/walk for 15 minutes at a time up to one hour per day; sit for one-half hour at a time up to four hours per day; could not work above shoulder level or twist at the waist; could not lift or carry any weight because she needed crutches for ambulation; and could not squat, climb, or push/pull (Tr. 802). Plaintiff could have, but declined, to argue that the ALJ erred by not giving controlling weight to Dr. Gabelman's opinion as to these limitations. Plaintiff also could have, but declined, to argue that the ALJ did not apply the factors set forth in 20 C.F.R. § 404.1527(d) in determining what weight to assign to this opinion. Regardless, it appears any error on the part of the ALJ in his treatment of this opinion would be harmless, under the circumstances of this case, due to the fact that this opinion was not rendered until nearly five months after Plaintiff's date of last insured of September 30, 2006.

be based on Plaintiff's own recitation of her symptoms and limitations, was not supported by his findings on examination, and was not prepared until nearly five months after Plaintiff's date of last insured of September 30, 2006 (Id.). The ALJ further explained that the objective medical evidence did not support the degrees of limitation posited by Dr. Gabelman for any period before Plaintiff's date of last insured (Id.) The ALJ is not required to credit a treating physician's opinion that is inconsistent with the objective medical evidence or to give substantial weight to a treating physician if his opinion is a mere conclusory statement, unsupported by clinical and/or diagnostic findings. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1981). Moreover, if the treating physician's conclusions are based, in large part, on Plaintiff's subjective complaints of pain, the ALJ's decision to disregard the doctor's opinion is proper. *See Ladwig v. Comm'r of Soc. Sec.,* No. 00-6585, 2002 WL 1491872 (6th Cir. July 11, 2002) (unpublished); *see also Young v. Secretary of Health & Human Servs.* 925 F.2d 146, 151 (6th Cir. 1990).

Based upon the above, the Court concludes there is substantial evidence to support the ALJ's treatment of the opinions of Drs. Gabelman and Waldbaum.

### C. The ALJ's Determination as to Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in his credibility assessment. Specifically, Plaintiff claims that in considering the factors set forth in 20 C.F.R. § 416.929(c)(3), the ALJ did not appropriately evaluate Plaintiff's symptomology, which is consistent with the objective medical evidence and the opinions of her treating sources that she cannot work. Plaintiff asserts that she can only stand for 15 to 20 minutes without pain, sit for 25 minutes without pain and

discomfort; and cannot lift a gallon of milk; yet, the ALJ concluded she can perform a range of light work.

The Court recognizes pain alone may be sufficient to support a claim of disability. *See Grecol v. Halter,* 46 Fed. Appx. 773, No. 01-3407 (6th Cir. Aug 29, 2002)(unpublished); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir 1984). However, a claimant's subjective assertions of pain standing alone, will not suffice. In most disability benefits cases, to find disabling pain, there must be objective evidence of an underlying medical condition and either objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain. *See Buxton v. Halter* 246 F.3d 762, 773 (6th Cir. 2001); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986).

The *Duncan* test, however, is not the end of the analysis. The Commissioner must consider other factors that may or may not corroborate Plaintiff's allegations of pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525,531 (6th Cir. 1997); *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1986); 20 C.F.R. § 416.929(c)(2). The other factors may include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-

40; 20 C.F.R. § 416.929(a), (c)(3). Similarly, the ALJ may take notice of the presence of muscle atrophy, reduced joint motion, muscle spasm, sensory deficits, or motor disruption.

A review of the ALJ's opinion reflects that he concluded under *Duncan* that Plaintiff's impairments could reasonably be expected to produce symptoms such as pain, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were credible only to the extent of the limitations he assessed in her RFC (Tr. 18). The ALJ stated that he was required to consider the seven factors set forth in 20 C.F.R. § 416.929(c)(3). The ALJ reviewed the evidence in the record and concluded that Plaintiff's allegations were not reasonably consistent with the objective medical evidence (Tr. 18-19). The ALJ noted that in May 2005, Plaintiff exhibited a lot of chronic pain behaviors, but the examiner concluded Plaintiff was resisting the whole exam (Tr. 19). The ALJ further noted the examiner's comment that although Plaintiff clearly had a bad disc, what she expressed in terms of pain was overwhelming, and thus, it was hard to determine whether it was totally from the pain or somewhat from other issues (Id.) The ALJ also noted that Plaintiff reported in May 2006, prior to her cervical spine surgery, that she was able to perform yard work and do all of her household activities (Id.) And, it was recorded in July 2006 that Plaintiff was independent in activities of daily living (Tr. 19-20). The ALJ observed that although Plaintiff used crutches in February 2007, the examiner described their use as totally unnecessary (Tr. 20).

Thus, the ALJ's opinion reflects that he considered the factors set forth in 20 C.F.R. § 416.929(c)(3)—including Plaintiff's daily activities, statements made by Plaintiff and her treating physicians; and measures used by Plaintiff to relieve her symptoms—and determined that her allegations were not consistent with the objective medical evidence. When there are

14

discrepancies between what a claimant has said and what the written record shows, a reviewing court should not substitute its credibility findings for those of the ALJ. *See Wagner v.* Apfel, 238 F.3d 426, 2000 WL 1872049, *4 (6th Cir. Dec. 15, 2000)(Table); *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ need not fully credit a subjective complaint where there is no underlying medical basis. *Fraley v. Secretary of Health & Human Servs.*, 733 F.2d 437, 440 (6th Cir. 1984). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Bynum v. Apfel*, No. 01-2331, 2001 WL 1906274, at *6 (W.D. Ten.. 2001)(internal citations and quotations omitted). The ALJ's credibility assessment is entitled to deference, and the ALJ's opinion demonstrates that he considered the record as a whole and articulated adequate reasons for finding Plaintiff not fully credible. Accordingly, the Court finds there is substantial evidence to support the ALJ's credibility assessment.

### D. The ALJ's Reliance on the Testimony of the Vocational Expert

Plaintiff also argues that the ALJ erred in his reliance on the VE's testimony. Specifically, Plaintiff claims the ALJ relied on the VE's response to a hypothetical question that did not accurately reflect the limitations imposed by Plaintiff's impairments.

Once it is determined a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)*; Cole v. Secretary of Health & Human Servs.*, 829 F.2d 768, 771 (6th Cir. 1987). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v.*

*Secretary of Health & Human Servs.*, 820 F.2d 777,779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *See id.* However, the hypothetical question posed to a vocational expert must accurately portray a claimant's physical and mental state. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See id*.

The ALJ found Plaintiff retains an RFC for light work, with no work above shoulder level with her right dominant arm; no hyper-extension of her neck; no use of ladders, ropes or scaffolds; no more than occasional use of stairs and ramps; and no more than occasional stooping, kneeling, crouching and crawling (Tr. 17). In making this assessment, the ALJ considered Plaintiff's allegations and credibility, the opinions of Drs. Waldbaum and Gabelman, the opinion of the state agency physician, and the objective medical evidence in the record. The ALJ noted that Plaintiff had a good result from her right shoulder surgery in January 2004, that MRI results showed a disc bulge without significant canal or foraminal narrowing in her back, and that x-rays of her cervical spine after surgery showed good alignment (Tr. 18). The ALJ also noted that although Plaintiff had decreased range of motion, she normal strength, sensation, and reflexes in early examinations and in May 2005, October 2006, and January through March 2007 examinations (Tr. 18-19).

There is substantial evidence to support the ALJ's RFC assessment. The ALJ's RFC assessment is supported by the opinion of the state agency physician, who opined that Plaintiff

could perform light work with no overhead reaching on the right, and noted that Plaintiff was partially credible (Tr. 190-97). The ALJ accounted for Plaintiff's neck and shoulder problems with limitations in above shoulder work and hyper-extension of the neck. With respect to Plaintiff's back, the record clearly demonstrates that Plaintiff has degenerative disc disease, which is expected to cause pain. However, the ALJ gave reasonable reasons for finding Plaintiff's pain allegations to be not fully credible. Moreover, MRI and X-rays results of Plaintiff's lumbar spine do not seem to have changed significantly over time, despite fluctuations in Plaintiff's pain behavior and evaluation results in strength, tenderness, range of motion, and straight leg raising. Plaintiff's physicians frequently noted that her allegations outweighed findings on examination and that she exhibited dramatic pain behaviors and guarding. Dr. Huang observed that Plaintiff's pain was quite overwhelming, and thus it was difficult to determine whether her complaints were totally from pain or somewhat from other issues (Tr. 213).

  The ALJ asked the VE to consider an individual of Plaintiff's age, education, and vocational background who could perform light work, with no work above shoulder level with her right dominant arm; no work involving hyper-extension of the neck; no work involving ladders, ropes and scaffolds; no work involving more than occasional use of stairs and ramps; and no work involving more than occasional stooping, kneeling, crouching, and crawling (Tr. 965). The VE responded that such an individual could perform Plaintiff's past work as a housekeeping cleaner (Id.). Plaintiff's attorney asked the VE to consider an individual who could not lift anything over two pounds and could do only less than frequent handling (Tr. 967-68). The VE responded that such an individual could not perform Plaintiff's past work or other

jobs in the national economy (Tr. 968-70).  The hypothetical posed by the ALJ accurately reflects the ALJ's RFC assessment.  The Court determined that there is substantial evidence to support the ALJ's RFC assessment.  Accordingly, the Court finds there is substantial evidence to support the ALJ's reliance on the VE's testimony that Plaintiff can perform her past work as a housekeeping cleaner in response to the hypothetical question posed by the ALJ.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: March 18, 2008